122 Pa. Commonwealth Ct. 493 (1989)
552 A.2d 730
Pennsylvania Builders Association; G. Keith Constructors, Inc., David G. Heisey Development Company, Inc., and David G. Heisey, Inc., Petitioners
v.
Commonwealth of Pennsylvania, Department of Revenue, Respondent.
No. 3551 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued September 16, 1988.
January 6, 1989.
Argued September 16, 1988, before Judges DOYLE and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.
*494 Donald J. Murphy, with him, Loudon L. Campbell, Calkins & Campbell, for petitioners.
Ronald H. Skubecz, Deputy Attorney General, with him, LeRoy S. Zimmerman, Attorney General, for respondent.
OPINION BY JUDGE DOYLE, January 6, 1989:
Before us for consideration are cross-motions for summary judgment filed by the Pennsylvania Builders Association and several individual builder-developers (Petitioners), and the Commonwealth of Pennsylvania, Department of Revenue (Department). Petitioners commenced this action by filing a petition for review in the nature of a complaint and subsequently filed an amended petition for review in the nature of a complaint within our original jurisdiction[1] seeking relief pursuant to the Declaratory Judgments Act, 42 Pa. C. S. §§7531-7541. Therein, Petitioners ask that we declare invalid or unconstitutional a provision of the Realty Transfer Tax Article of the Tax Reform Code of 1971[2] (Code) which provides that some contracts for improvements to real estate are taxable.
*495 In their petition, Petitioners allege that "widespread uncertainty" has arisen with respect to the rights and duties of the parties to separate construction contracts and real estate conveyances, and claim that they are uncertain whether these contracts for home construction are subject to the transfer tax. Petitioners seek declaratory relief and request that we grant summary judgment in their favor by finding that contracts for improvements to real estate are not subject to taxation under the 1986 amendments to the Code. The Department asks that we grant its cross-motion for summary judgment and find that the actual monetary worth of executory construction contracts is a constituent part of the value of a taxable document under the transfer tax provision of the Code, and that the inclusion of executory construction contracts in the value base for tax computation is in accord with constitutional, statutory, and decisional law.
The parties have stipulated to the following facts for purposes of our consideration of the cross-motions for summary judgment. Petitioners are builders and developers of real estate who are subject to the realty transfer tax provisions of the Code. They are engaged, individually or with others, either in (a) the development of real estate by the sale of building lots, with an ownership interest in the construction enterprise which follows, or, (b) the construction of houses with an ownership interest in the enterprise which developed and sold the lots on which the houses were built. Further, "some [Petitioners] engaged in the development of real estate and sale of building lots will not sell such building lots unless the purchaser first enters into a contract *496 with a designated construction company." (Stipulation of Fact No. 14) This type of total integrated agreement creates the situation where, either simultaneously with, or prior to, the transfer and conveyance of the building lot to its purchaser, the purchaser enters into a contract for the construction of a house on that lot with the developer or with another construction company in which the developer has an ownership interest or is otherwise closely related.
To illustrate the problem, consider two alternate arrangements. In the first, the developer subdivides an entire tract and allows the buyer to choose the lot and then enters into one contract for the sale of a new home for a fixed price which includes the cost of the ground. The entire consideration, or "value," is subject to the transfer tax because the deed at settlement conveys the real estate now improved by the addition of a new home. In the second arrangement, the developer subdivides and improves a tract and sells individual lots. The purchaser makes settlement and receives a deed for the unimproved real estate and may either then, or later, contract with a builder to build a home on his lot; or he may never develop the lot. In this situation, only the value of the unimproved lot is subject to the transfer tax.
The issue now confronting this Court in this case involves a scenario which fits into neither of the above illustrations, but lies somewhere in between.
Pa. R.C.P. 1035(b) provides that summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." We hold that the pleadings in this matter, taken together with the stipulation of facts agreed upon and filed by the parties, establish that there are no genuine issues of material fact. It therefore *497 remains for us to determine which, if either, of the parties is entitled to judgment as a matter of law.
Section 1102-C of the Code, 72 Pa. C. S. §8102-C, imposes a one percent tax on the "value" of real estate represented by a "document," such as a deed, presented for recording. Section 1101-C of the Code, 72 Pa. C. S. §8101-C, defines both "document" and "value." Prior to the 1986 amendments to the Code, the value of a document was determined by one of two methods. The first method applied to cases of a bona fide arms-length sale of real estate where the value was the actual monetary worth of the land or the actual consideration paid therefor. Reference to the contract of sale was allowed where the document of conveyance set forth nominal consideration. The second method was applied in the case of a transfer by gift or any other document without consideration, and value was determined to be the actual monetary worth of the property granted, sold or otherwise conveyed with the proviso that such value could not be less than the highest assessment of the land for local tax purposes.
In 1986, the General Assembly amended the transfer tax provisions of the Code. The amendment relative to this matter included changes in the definition of "document,"[3] and added two additional definitions of *498 "value." The third valuation method, the first added by the 1986 amendments, is applied when value cannot be determined under the two previously existing methods. Here, reference is made to the actual monetary worth of the easement or other interest conveyed. In the event that value cannot be determined by any of the previous methods, the fourth method, or the second added by the 1986 amendments, applies. It is this fourth valuation provision that Petitioners ask us to invalidate.
The fourth valuation method found in Section 1101-C defines value as:
The actual consideration for or actual monetary worth of any executory agreement for the construction of buildings, structures or other permanent improvements to real estate between the grantor and other persons existing before the transfer and not removed thereby, or between the grantor, the agent or principal of the grantor or a related corporation, association or a partnership and the grantee existing before or effective with the transfer.
Under the Department's interpretation of this fourth method, the phrase "between the grantor and other persons existing before the transfer and not removed thereby" applies where the seller has contracted to have improvements made to his or her house (e.g., a contract to add an extra room) and the buyer agrees to buy the house even though the contract has not been completed. While the contract is being carried out, the real estate is conveyed. Because the grantee in this situation did not request the grantor to cancel the contract for *499 improvements, it is not removed thereby. In this instance, the Department submits that the actual consideration or actual monetary worth of the contracted improvements is an integral part of the true value of the real estate represented by the deed, or "document," to be recorded.
The phrase "between the grantor, the agent or principal of the grantor or a related corporation, association or partnership and the grantee existing before or effective with the transfer" is interpreted by the Department to apply to Petitioners' activities as stipulated herein. The Department argues that under this scenario, the buyer never intends to receive less than a consolidated home and the developer (Petitioners herein) never intends to sell less than a home. The contract to build is entered into by the developer-grantor who is related to the builder through common ownership, and the contract is executed prior to or concurrent with the developer deeding the property to the buyer. The contract is not "removed" because the buyer has bargained for a house he or she wishes to have built. The Department thus submits that the true value of the real estate represented by the deed recorded in this instance is the total package of the lot and house, and that the amount to be paid to build that house is a ready and reliable way to determine the full value of the package sold at a new residential development.
With this in mind, we now consider Petitioners' argument that contracts for improvements to real estate are not subject to the realty transfer tax provisions of the Code. Subsumed in this argument are four sub-arguments, two of which raise issues of constitutionality and vagueness. The two remaining arguments, which we address first, concern the interpretation of the language of the taxing provisions themselves.
*500 Petitioners first argue that executory building contracts are not subject to the realty transfer tax provisions of the Code because the contract itself is not an interest in real estate. In Commonwealth v. Passell, 422 Pa. 473, 223 A.2d 24 (1966), our Supreme Court held that a document that effectuates a transfer of an interest in realty is necessary before the tax may be imposed. Earlier, in Smith v. Messner, 372 Pa. 60, 92 A.2d 417 (1952), the Supreme Court considered the taxability of an agreement of sale and concluded that even though the agreement created an interest in land, it did not convey such an interest and was therefore not taxable. The court further found that the statutory definition of "document" contemplates an executed conveyance and implicitly excludes agreements which are executory in nature with mutual promissory obligations. Id. Petitioners thus conclude, by analogy, that an agreement to make future improvements to land, conveyed at present for the full value of the land only, does not convey or create an interest in real estate, and is therefore not subject to the transfer tax.
Petitioners correctly state that only those documents which convey an interest in real estate are taxable. However, their analogy between agreements of sale and the building contracts here at issue is inapposite because it misidentifies the issue. Our task here is not to decide whether or not these executory construction contracts are taxable. What is at issue is whether or not the Department's use of these contracts as a method of valuation for taxable documents as defined in the transfer tax provisions of the Code will be sanctioned. Further, Petitioners' argument ignores the fact that none of the other three methods of valuation convey interests in real estate. We therefore find this argument to be unpersuasive.
*501 Petitioners' second argument directly addresses the valuation provision in question. Here, Petitioners argue that this definition of value applies only to those situations where the actual monetary worth of the interest in real estate conveyed by a document is not readily determined by examining the actual consideration paid or by utilizing assessed valuation together with the common level ratio. Petitioners' argument then, in a nutshell, is that the fourth method of valuation does not apply if one of the other three does and that the fourth definition of value was not intended to apply to their activities.
Instead, Petitioners claim that in all cases relevant to this matter, there is a bona fide sale of real estate at arm's length for actual monetary worth, i.e., the building lot sold by the builder-developer, and that the taxable "value of the real estate represented by such document" is the amount of actual consideration of the real estate only. In other words, Petitioners argue that it is the first valuation method which applies to their activities, and not the fourth method as the Department would have us find.
Petitioners submit that it was the intent of the General Assembly to have the realty transfer tax computed upon the actual monetary worth of the interest conveyed by the document coupled with a recognition that cases will exist where an easement or other interest in real estate is being conveyed and the value of that interest is not as easily determined as it is in a bona fide sale and is also not determinable through reference to the common level ratio. It is in these rare instances only, Petitioners submit, that the fourth, "last ditch" valuation method is utilized. The Department argues conversely that the intent of the General Assembly was to impose the transfer tax on the full value of the real estate represented by the deed through allowing the actual *502 consideration of the home building contract to be included in the value of the document conveying the lot.
In order to resolve this conflict, we turn to the provisions of The Statutory Construction Act, 1 Pa. C. S. §§1901-1991. Section 1921 provides that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly and, that every statute shall be construed, if possible, to give effect to all its provisions. 1 Pa. C. S. §1921(a). Section 1921 also provides that where the words of the statute are not explicit, the intent of the General Assembly may be ascertained by considering, among other matters, the mischief to be remedied and the object to be attained. 1 Pa. C. S. §1921(c)(3)(4). Section 1928 provides that all provisions of a statute imposing taxes are to be strictly construed. 1 Pa. C. S. §1928(b)(3). Finally, Section 1922 provides that in ascertaining the intent of the General Assembly, we may presume that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable, and that the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth. 1 Pa. C. S. §1922(1)(3).
We believe that to interpret the valuation method here at issue as Petitioners ask would be tantamount to reading that provision out of the Code and would consequently fail to give effect to all provisions of the transfer tax article. Prior to the 1986 amendments to the Code, the effect of Petitioners' activities as stipulated was such that buyers who purchased homes under Petitioners' arrangement paid realty transfer tax on the consideration for the lot alone, while those who purchased a newly constructed home where the lot and the finished house were sold together paid the transfer tax on the full consideration for both. The 1986 amendments to the article provided for, inter alia, a method by which the transfer *503 tax could be imposed on the full value of new home sales consummated under Petitioners' arrangement. The method devised by the General Assembly allows for the actual consideration of the home building contract to be included in the value base of the deed conveying the building lot, thus imposing the transfer tax on the full value of the real estate represented by the deed. We believe that the "mischief to be remedied" is the closing of the "loophole" represented by Petitioners' activities and that the "object to be attained" is that all new home sales be taxed uniformly on the full monetary worth of the interest in real estate conveyed.
Petitioners also claim that the application of the fourth valuation method to their activities would produce a result that is both impossible of execution and unconstitutional. We find Petitioners' concerns regarding impossibility of execution to be unfounded. The value of the document of conveyance under Petitioners' arrangement would merely be the total consideration reflected by the deed and the building contract.
Next, Petitioners submit that the required strict construction of the valuation provision at issue precludes the Department's interpretation. Petitioners correctly state the principle that every tax statute be construed most strongly and strictly against the government. Commonwealth v. Willson Products, Inc., 412 Pa. 78, 194 A.2d 162 (1963). However, it is only when there is "a reasonable doubt as to its construction or its application to a particular case, that doubt must be resolved in favor of the taxpayer." Id. (Original emphasis.) The application of the fourth method of valuation to Petitioners' situation, is not, however, all that doubtful considering the principles of statutory construction already discussed.
We now turn to Petitioners' constitutional claims. Petitioners first argue that the Department's interpretation *504 of the valuation provision at issue would result in the payment of different amounts of tax by purchasers of building lots of identical monetary worth and would therefore violate the Uniformity Clause of the Pennsylvania Constitution.[4] We have recently restated the considerations to be weighed in determining whether there is a violation of the Uniformity Clause of our constitution, and whether the equal protection clause of the Fourteenth Amendment to the United States Constitution is likewise violated. In CRH Catering Co., Inc. v. Commonwealth, 104 Pa. Commonwealth Ct. 91, 521 A.2d 497 (1987), we reiterated that the legislature possesses wide discretion in matters of taxation, and that the taxpayer bears a heavy burden to demonstrate that a classification made for purposes of taxation is unreasonable. Indeed, we stated that tax legislation will not be declared unconstitutional unless it "clearly, palpably and plainly violates the Constitution." Id. at 98, 521 A.2d at 501 (citations omitted). We further stated therein that under both the equal protection and uniformity clauses, absolute equality and uniformity in taxation are not required, and we set forth the following test:
The applicable test where the validity of a classification for tax purposes is challenged is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary, reasonable and just basis for the difference in treatment. `Stated alternatively, the focus of judicial review is upon whether there can be discerned "some concrete justification" *505 for treating the relevant group of taxpayers as members of distinguishable classes subject to different tax burdens.'
Id. (Citations omitted.)
In its brief and again at oral argument, the Department limited application of the valuation method here at issue to construction contracts that are part of a bargained for conveyance of land as distinguished from all other construction contracts. The Department argues that the classification is not arbitrary but rather is a legitimate and reasonable one because only contracts with persons who own and are selling the land on which the construction will take place (or are related to the owners and sellers of the lot) are affected. It distinguishes this situation from one where a person owning a lot may someday decide to build a house on it. If this latter landowner decides to build, no real estate will be conveyed when a builder is hired. The parallel to this situation is the case where a home owner adds a room to his or her house. Again, no land transfer is involved in this instance. Only if and when either of these owners sells the house will the value added by or to the house be included in the tax base.
Applying the CRH Catering principles to these facts, we find that the tax scheme here at issue meets constitutional muster because there exists an adequate basis for classifying Petitioners' construction contracts as part of the value of a bargained for conveyance of land. Further, we believe that rather than operating to create a nonuniform taxing situation, the fourth valuation method operates to establish uniform taxation because all home buyers are being taxed similarly in that they now must pay tax on the full consideration for both house and lot.
Finally, Petitioners claim that the fourth valuation provision is unconstitutionally vague. They argue that *506 phrases contained therein such as "related corporation" and contracts existing before the transfer and "not removed thereby" are not only vague, indefinite and uncertain, but also are incomplete, conflicting and inconsistent in that they resist rational interpretation or nondiscriminatory enforcement.
Vague statutes offend the constitution because they may (1) trap the innocent by failing to give a person of ordinary intelligence reasonable opportunity to know what is prohibited so that he may act accordingly; or (2) result in arbitrary and discriminatory enforcement in the absence of explicit guidelines for their application. William L., 477 Pa. 322, 353 A.2d 1228, cert. denied, 439 U.S. 880 (1978). This court has stated that a legislative enactment will be deemed invalid "only if it is so vague and indefinite that courts are unable to determine with any reasonable degree of certainty the intent of the legislative body or so incomplete, conflicting and inconsistent in its provisions that it cannot be executed." McCoy v. Lincoln Intermediate Unit No. 12, 38 Pa. Commonwealth Ct. 29, 36, 391 A.2d 1119, 1123 (1978), cert. denied, 441 U.S. 923 (1979). Further, every reasonable presumption in favor of a statute's validity must be made and only if it clearly appears that it cannot be supported can it be held invalid. Willcox v. Penn Mutual Life Insurance Co., 357 Pa. 581, 55 A.2d 521 (1947).
In light of the above, we believe that the phrases quoted by Petitioners are commonly understood and clearly apply to their activities. The Statutory Construction Act of 1973 directs that words and phrases be construed according to their common and approved usage. 1 Pa. C. S. §1903. The common usage of the words and phrases questioned by Petitioners supply the meanings that they claim are indefinite and inconsistent.
*507 Petitioners also argue that the phrase "actual consideration for or actual monetary worth of any executory contract for the construction of buildings" contains vague and undefined concepts. The concepts of "actual consideration" and "actual monetary worth" were contained in the original provisions of the precursor of the present transfer tax, the Realty Transfer Tax Act of 1951.[5] The constitutionality of that act was upheld by our Supreme Court in Sablosky v. Messner, 372 Pa. 47, 92 A.2d 411 (1952). In so doing, the Sablosky court also ruled that the value provision in that statute was not vague, and stated that "`[c]ommon sense and practical every day business experience are the best guides . . . . Taxation is a practical, and not a scientific problem.'" Id. at 54, 92 A.2d at 414 (quoting Philadelphia and Reading Coal and Iron Co. v. Northumberland County Commissioners, 229 Pa. 460, 471, 79 A. 109, 112 (1911)). Using that approach, the meaning of this phrase is clear; it refers to the money paid or to be paid to build the house.
Based on the foregoing, we find that Petitioners are not entitled to the declaratory relief requested and their motion for summary judgment is therefore denied. We do, however, find that the actual monetary worth of an executory construction contract is a constituent part of the value of a taxable document and that, in the limited circumstances herein stated, the inclusion of executory construction contracts in the value base is in accord with constitutional, statutory and decisional law. There being no genuine issue as to any material fact, the Department is therefore entitled to judgment as a matter of law and its cross-motion for summary judgment is granted.

*508 ORDER
NOW, January 6, 1989, Petitioners' motion for summary judgment in the above-captioned matter is hereby denied and the Department of Revenue's cross-motion for summary judgment is granted. It is hereby declared that the fourth valuation method is properly applied to the facts herein as stipulated between the parties.
Judge MacPHAIL did not participate in the decision in this case.
DISSENTING OPINION BY JUDGE PALLADINO:
I respectfully dissent. The majority opinion concludes that the actual monetary value of an executory construction contract is part of the value of a land transfer for realty transfer tax purposes. In effect what the majority has done is subject executory contracts to real estate transfer tax. Such a result is contrary to the realty transfer tax provisions of the Tax Reform Code of 1971 (Code).[1]
The realty transfer tax provisions of the Code impose a tax only upon the value of documents that convey an interest in real estate. Section 1102-C of the Code, 72 P.S. §8102-C, provides in pertinent part: "Every person who makes, executes, delivers, accepts or presents for recording any document . . . shall be subject to pay for and in respect to the transaction or any part thereof . . . a State tax of 1% of the value of the real estate presented by such document." Section 1101-C of the Code, 72 P.S. §8101-C, defines "document" in pertinent part as follows: "Any deed, instrument or writing which conveys, transfers, devises, vests or evidences any transfer or devise of title to real estate.. . ." Thus, a deed transferring title to a piece of land conveys an interest in real estate and is subject to realty *509 transfer tax. However, an executory agreement to construct a house on that piece of land does not convey an interest in real estate, and the Code has not subjected such an agreement to the realty transfer tax provisions.
The majority concludes that the General Assembly intended for the value of an executory construction contract, entered into prior to or simultaneously with the conveyance of a lot to be included in the value of the deed conveying the lot. With this conclusion I disagree.
The sole basis for the majority's conclusion is the fourth valuation method contained in the statute's definition of value. This fourth valuation method must be considered within the context of the entire definition of value. "Value" is defined in section 1101-C, 72 P.S. §8101-C, (emphasis added) as follows:
(1) In the case of any bona fide sale of real estate at arm's length for actual monetary worth, the amount of actual consideration therefor, paid or to be paid. . . . Provided, that where such documents shall set forth a nominal consideration, the `value' thereof shall be determined from the price set forth in or actual consideration for the contract of sale;
(2) In the case of a gift, sale by execution upon a judgment or upon a foreclosure of a mortgage by a judicial officer, transactions without consideration or for consideration less than the actual monetary worth of the real estate . . . the actual monetary worth of the real estate determined by adjusting the assessed value of the real estate for local real estate tax purposes for the common level ratio of assessed values to market values of the taxing district . . .;
(3) In the case of an easement or other interest in real estate the value of which is not determinable *510 under clause (1) or (2), the actual monetary worth of such interest, or

(4) The actual consideration for or actual monetary worth of any executory agreement for the construction of buildings, structures or other permanent improvements to real estate between the grantor and other persons existing before the transfer and not removed thereby or between the grantor, the agent or principal of the grantor or a related corporation, association or partnership and the grantee existing before or effective with the transfer.
Clearly, the third and fourth methods of valuation are to be used only where the value of an interest in real estate is not readily determinable using the first or second method of valuation. The fourth method of valuation does not apply where there is a bona fide sale for actual monetary worth and the value of the interest conveyed is readily determinable.
Accordingly, defendant's motion for summary judgment should be denied. Plaintiff's motion for summary judgment should be granted on the ground that executory construction contracts are not taxable documents for realty transfer tax purposes and may not be included in the value of real estate conveyed prior to or simultaneously with their execution.
NOTES
[1] 42 Pa. C. S. §761(a)(1) provides that this Court shall have original jurisdiction of the civil actions and proceedings against the Commonwealth government.
[2] Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §§XXXX-XXXXX. Sections 1101-C to 1112-C of the Code constituting the Realty Transfer Tax Article were added by Section 4 of the Act of May 5, 1981, P.L. 36, 72 P.S. §§8101-C to 8112-C, and were subsequently amended relevant to this matter by Sections 8-17 of the Act of July 2, 1986, P.L. 318. Petitioners seek the invalidation of a provision of the Realty Transfer Tax Article as amended by the 1986 Act.
[3] The definition of "document" found in Section 1101-C of the Code, 72 P.S. §8101-C, was amended in 1986 to read as follows:

`Document.' Any deed, instrument or writing which conveys, transfers, devises, vests, confirms or evidences any transfer or devise of title to real estate, but does not include wills, mortgages; deeds of trust or other instruments of like character given as security for a debt and deeds of release thereof to the debtor, land contracts whereby the legal title does not pass to the grantee until the total consideration specified in the contract has been paid or any cancellation thereof unless the consideration is payable over a period of time exceeding thirty years or instruments which solely grant, vest or confirm a public utility easement. `Document' shall also include a declaration of acquisition required to be presented for recording under section 1102-C.5 of this article.
[4] Pa. Const. art. VIII, §1. This section of the Constitution requires that:

All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws.
[5] Act of December 27, 1951, P.L. 1742, as amended, formerly 72 P.S. §§3283-3292, repealed by Section 6 of the Act of May 5, 1981, P.L. 36. See supra, Note 2.
[1] See majority opinion at n.1.